**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

**CIVIL ACTION NO. 2:21-CV-085 (WOB-EBA)**

**RODERICK HINES,**                                                              **PLAINTIFF,**

**VS.**                     **MEMORANDUM OPINION AND ORDER**

**ARCHER DANIELS MIDLAND COMPANY,**                              **DEFENDANT.**

This is a lawsuit brought by Roderick Hines ("Hines") against Archer-Daniels-Midland Company ("ADM") for employment discrimination and harassment based on race. Currently before the Court are Defendant's Motion for Summary Judgment and Defendant's Motion for Attorney's Fees. (Doc. 46).

The Court has carefully reviewed this matter and, being advised, now issues the following Memorandum Opinion and Order.

***Factual and Procedural Background***

Plaintiff Hines was hired as an operator in the Liquids Department of Defendant ADM on March 20, 2017. (*Id.* at 1; Doc. 18 ¶ 6). As an operator, he "built flavors" by retrieving ingredients from various areas of the facility and assembling them into batches of flavoring based on recipes. (Doc. 18 ¶ 6; Doc. 46 at 2). Hines is African American. (Doc. 6-2).

Hines alleges that his supervisor at ADM, Josh White ("White"), harassed him by assigning him batches that were more difficult and complex than those assigned to other employees. (Doc.

1

18 ¶ 8). Hines testified that ADM management would also harass him based on how long it took him to complete batches, which were intricate and necessarily required great care, and that no other employees were similarly timed. (Doc. 46-1, Hines Dep. at 22:4-23:8).

On April 6, 2020, Hines questioned his assignment, asserting that other employees had failed to do their assignments, which caused his workload to be heavier. (Doc. 46 at 2). Wayne "Matt" O'Brien ("O'Brien"), a production supervisor at ADM, created a witness statement regarding the incident on the same day and stated that he saw Hines in the hallway, where he was "speaking with his voice raised almost to the level of yelling." (Doc. 46-2 at 2). According to O'Brien, Hines used profanity toward his supervisor, including by saying, "This is bull shit. Why am I the only one being targeted when I'm the one getting fucked over. I won[']t be the only one with blood on my hands." (*Id.*; Doc. 46 at 2). Hines also stated during the incident that he wouldn't speak with management unless HR was present. (Doc. 46-2 at 2).

Hines's supervisor, Sabrina Wissman ("Wissman"), also created a witness statement on the day of the incident, in which she confirmed that Hines was "aggressive," used profanity, and refused to talk to supervisors or continue the conversation in the office without HR. (Doc. 46-3 at 2). Hines, however, contends that he did not use profane language or raise his voice. (Doc. 47 at 4).

ADM immediately investigated the incident. (Doc. 46 at 2). ADM alleges that it obtained independent statements from three other employees who observed the incident, each of whom confirmed that Hines acted inappropriately, but those statements were not filed into the record before this Court. (*Id.*). Liquids Production Manager Edsel Haislip ("Haislip") left two voicemails with Hines the next day in order to "get his side of the story," but Hines did not return the calls. (*Id.* at 2-3; Doc. 46-4 at 2; Doc. 46-5 at 2). Hines later submitted a handwritten statement indicating that he had only intended to express his feelings about the adverse impact the issues had on his ability to meet ADM's goals. (Doc. 46-6 at 2).

On April 9, 2020, Hines was terminated.[1] (Doc. 18 ¶ 6; Doc. 46 at 3). On the same day, Hines called ADM's Compliance Hotline to report alleged unfair treatment by his supervisor. (Doc. 46 at 3; Doc. 46-7 at 2). The report of the call does not reflect that Hines claimed to be subjected to discrimination based on race. (*See* Doc. 46-7). On April 27, 2020, the compliance case was closed because it was "unsubstantiated." (*Id.* at 2, 5; Doc. 46 at 3). The Compliance Report also reflected that Hines was terminated for "improper conduct and creating a hostile work environment" and

---

[1] In his Response to ADM's Motion for Summary Judgment, Hines alleges that he was terminated on April 7, the day following the incident. (Doc. 47 at 4). However, in his Amended Complaint, Hines alleges that he was terminated on April 9. (Doc. 18 ¶ 6).

that he had not returned a phone call regarding the investigation. (Doc. 46 at 3; Doc. 46-7 at 5).

Hines filed this lawsuit in Kenton County Circuit Court on June 5, 2021, and Defendant properly removed it to this Court. (Doc. 1). Thereafter, Hines filed an Amended Complaint, which alleges four counts: (1) harassment and discrimination; (2) defamation and harassment; (3) wrongful termination; and (4) punitive damages. (Doc. 18). On January 28, 2022, this Court heard oral argument on ADM's motion to dismiss the Amended Complaint and denied the motion without prejudice. (Doc. 30).

### *Analysis*

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is inappropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.* However, "[t]he non-moving party also may not rest upon its mere allegations or

4

denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e)(2)).

Hines has stated that he does not wish to proceed with his defamation claim. (Doc. 47 at 2). Accordingly, the Court grants Defendant's Motion for Summary Judgment with respect to that claim.

### A. Race Discrimination

In this case, Hines brings claims under both Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, and the Kentucky Civil Rights Act ("KCRA"), codified at K.R.S § 344. (*See* Doc. 46-9 ¶ 19). "Because [KRS] Chapter 344 mirrors Title VII of the Civil Rights Act of 1964 . . . , we use the federal standards for evaluating race discrimination claims." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) (citing *Ky. Comm'n on Hum. Rts. v. Ky.*, 586 S.W.2d 270, 271 (Ky. Ct. App. 1979)). Therefore, this Court will apply the federal standards under Title VII to both claims in this case.

"Title VII makes unlawful an employer's decision to 'discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race,

color, religion, sex, or national origin.'" *Id.* (quoting 42 U.S.C. § 2000(e)-2(a)(1)). In the absence of direct evidence of discrimination,[2] courts apply the *McDonnell Douglas* burden-shifting framework to discrimination claims. *Brewer v. New Era, Inc.*, 564 F. App'x 834, 840 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)).

Under this framework, the burden is first placed on the plaintiff to submit evidence from which a reasonable jury could conclude that they established a prima facie case of discrimination. *Id.* The burden then shifts to the employer to proffer a legitimate nondiscriminatory reason for its employment decision. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001)). If the employer provides such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reason offered by the employer was a pretext for unlawful discrimination. *Id.*

### i. *Prima Facie Case*

To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered

---

[2] In his Response to ADM's Motion for Summary Judgment, Plaintiff does not argue that he has established any direct evidence of discrimination. (*See* Doc. 47 at 2-4).

an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated nonprotected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (internal citations omitted).

ADM does not dispute that Hines is African American, which makes him a member of a protected class, or that Hines was qualified for his position at ADM. (*See* Doc. 46 at 5-10). Similarly, Hines does not argue that he was replaced by someone outside his protected class. (*See* Doc. 47 at 2-4).

Hines testified that no other employees were timed while creating their assigned batches like he was. (Doc. 46-1, Hines Dep. at 22:18-23:4). However, "[a] 'mere inconvenience or an alteration of job responsibilities' is not enough to constitute an adverse employment action." *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc)). Even if supervisors questioned how long it took Hines to complete his assignments, Hines has not alleged, nor is there any evidence to support, that such questioning adversely impacted his wages or position at ADM. *See Baxter*, 533 F.3d at 402 (finding that a negative performance evaluation did not constitute an adverse employment action unless it had an adverse impact on an employee's wages or salary).

On the contrary, Hines was terminated following a conversation with his supervisor, Wissman, during which he discussed concerns regarding his workload. (Doc. 18 ¶ 10; Doc. 47 at 4). Although Hines contends that he did not raise his voice or use profanity, both Wissman and another supervisor, O'Brien, provided contemporaneous statements to the contrary.[3] (*See* Doc. 46-2 at 2; Doc. 46-3 at 2). While termination is undoubtedly an adverse employment action, Hines has not alleged or provided any evidence to establish that a nonprotected employee was similarly accused by a supervisor of raising their voice and using profanity in the workplace but was not terminated.

Therefore, because Hines has failed to show that he suffered an adverse employment action that a similarly situated, nonprotected employee did not, he has not established a *prima facie* case of race discrimination.

---

[3] Hines's argument that ADM cannot rely on exhibits in support of its Motion for Summary Judgment that it did not present at his deposition, (*see* Doc. 47 at 3), is not well taken, as a defendant need not introduce any, let alone all, of its evidence at the plaintiff's deposition. Hines has not argued that the exhibits would be inadmissible at trial but has in fact argued that they "*should* be presented at trial." (*Id.*) (emphasis added). Accordingly, the Court may properly consider ADM's exhibits in deciding the instant motion. *See Newberry v. Serv. Experts Heating & Air Conditioning LLC*, No. 5:17-131-JMH, 2021 WL 4768245, at *4 (E.D. Ky. Oct. 12, 2021), *appeal docketed*, No. 21-6057 (6th Cir. Nov. 10, 2021) (considering emails offered by the defendant in support of a motion for summary judgment where the plaintiff neither challenged their authenticity nor made a viable argument as to their inadmissibility).

## ii.  Pretext

Although Hines's race discrimination claim fails as a matter of law because he cannot establish a *prima facie* case, Hines has also failed to establish that ADM's proffered reason for his termination, that he engaged in inappropriate behavior at work, was a pretext for unlawful discrimination. Pretext can be shown if the employer's proffered reasons for an adverse employment action: "'(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'" *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018) (quoting *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014)).

Hines contends that he did not engage in the inappropriate conduct for which he was allegedly terminated, as he merely told his supervisor that he wanted to discuss the issues regarding his assignments with Human Resources. (Doc. 47 at 4). However, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713-15 (6th Cir. 2007)). Thus, "[i]f an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse

9

action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530-31 (6th Cir. 2012); *see also Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (stating that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect").

Here, ADM has established that it had an honest belief that Hines engaged in inappropriate behavior based on two contemporaneous statements from supervisors containing particularized facts regarding the incident and three statements it claims to have received from other employee-witnesses. (Doc. 46 at 9-10). Accordingly, even if Hines could establish that such a conclusion was mistaken or baseless because he did not actually engage in that conduct, he cannot establish pretext. *See Tingle*, 692 F.3d at 530-31.

### iii. K.R.S. § 446.070

Although the Amended Complaint does not specify the statutes under which Hines is seeking relief, Hines provided in his Responses to Defendant's Interrogatories that he also brought a claim under K.R.S. § 446.070. (Doc. 46-9 ¶ 19). Pursuant to K.R.S. § 446.070, "a person injured by the violation of any statute may

recover from the offender such damages as he sustained by reason of the violation." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). However, "this is limited to where the statute is penal in nature, or where by its terms the statute does not prescribe the remedy for its violation." *Id.* (internal citations omitted). The Kentucky Supreme Court has held that K.R.S. § 344, pursuant to which Hines brought his discrimination claim, both provides a remedy for discriminatory employment practices and "preempts the field of its application." *See id.* Accordingly, even if Hines could show that ADM violated K.R.S. § 344, he could not recover under K.R.S. § 446.070 for that violation.[4]

### iv.  K.R.S. § 336.700(2)

Hines also provided in his Responses to Defendant's Interrogatories that he brought a claim under K.R.S. § 336.700(2). (Doc. 46-9 ¶ 19). K.R.S. § 336.700(2) provides that "no employer shall require as a condition or precondition of employment that any employee . . . waive or otherwise diminish any existing or future claim, right, or benefit . . . ." Because there is no allegation or evidence that ADM required Hines to waive any claims,

---

[4] Hines would also be unable to recover for any Title VII violations under K.R.S. § 446.070, as "Kentucky courts have held that the 'any statute' language in KRS 446.070 is limited to Kentucky statutes and does not extend to federal statutes . . . ." *Young v. Carran*, 289 S.W.3d 586, 589 (Ky. Ct. App. 2008) (internal citations omitted).

rights, or benefits as a condition of his employment, this claim also fails as a matter of law.

## B. Hostile Work Environment

Hines also argues that he has established a viable hostile work environment claim. (Doc. 47 at 2-3). To survive a motion for summary judgment on such a claim, a plaintiff must establish: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment based on race or national origin; (3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there is a basis for liability on the part of the employer. *Owhor v. St. John Health-Providence Hosp.*, 503 F. App'x 307, 312 (6th Cir. 2012) (citing *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009)). "The third element requires a plaintiff to show that the workplace was permeated with harassment that was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

ADM argues that Hines has failed to present any evidence that he was subjected to severe or pervasive harassment or that any of the alleged harassment was based on race. (Doc. 46 at 11). Although

12

Plaintiff's Amended Complaint contains allegations that he was assigned "more excessive" batches than other employees, that White "invade[d] his workspace" to berate him, and that he was singled out and accused of taking breaks that he did not take, (Doc. 18 ¶¶ 8-9), Plaintiff has failed to present any evidence that these incidents actually occurred and he did not testify to them at his deposition or submit a sworn statement regarding them. At the summary judgment stage, "the plaintiff as the responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain[s] for trial." *Gurewardher v. Ormond*, No. 6:16-30-DCR, 2016 WL 6208275, at *2 (E.D. Ky. Oct. 21, 2016) (citing *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003)). Accordingly, the Court cannot find a genuine issue of material fact based on these allegations that appear only in the Amended Complaint.

When asked at his deposition about what specific instances of harassment he experienced, Hines only testified that, unlike other employees, he was timed as to how long it took him to complete assignments and that he was asked daily why it took him so long to complete batches. (Doc. 46-1, Hines Dep. at 21:19-23:4; 24:19-25:3). However, it is not harassment when a supervisor points out deficiencies in performance. *Laney v. Ohio Dep't of Youth Servs.*, 448 F. App'x 553, 556 (6th Cir. 2011); *see also Keever v. City of*

*Middletown*, 145 F.3d 809, 813 (6th Cir. 1998) (finding that "[c]onversations between an employee and his superiors about his performance do[] not constitute harassment simply because they cause the employee distress"). Accordingly, Hines has not established that he experienced any harassment at all, let alone that it was severe and pervasive.

Further, there is no evidence in the record to support Hines's argument that this alleged harassment was based on race. At the summary judgment stage, Hines cannot rely on the bare allegation that "he had no choice but to conclude his treatment was because of his ethnicity," (*see* Doc. 47 at 2), "but rather must set forth specific facts showing that there is a genuine issue for trial." *See Moldowan*, 578 F.3d at 374.

"A plaintiff may prove that harassment was based on race by either (1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)).

Hines has not alleged that any race-specific, derogatory terms were used at ADM. Additionally, Hines has not presented any evidence regarding whether there were other African American employees at ADM and, if so, how they were treated by supervisors.

14

Even if Hines was the only African American employee and was also the only employee to be subjected to timing constraints, there is no evidence that the timing constraints related to his race rather than his performance. *See Dickey v. McDonough*, No. 3:18-CV-0080-RGJ-CHL, 2021 WL 1535411, at *4 (W.D. Ky. Apr. 19, 2021) (finding that there was no evidence that incidents in which the only Black employee at an office was excluded from meetings and yelled at were related to race).

Although Hines contends that, because he worked in a secure environment at ADM, he "has not been able to secure tangible evidence to bolster his claims," (*see* Doc. 47 at 3), that argument is misplaced, as the deadline to complete discovery in this matter has long passed and Hines failed to raise any issues he may have had regarding discovery with the Court at the appropriate juncture. Accordingly, Hines's hostile work environment claim fails as a matter of law.

## C. Wrongful Termination

Hines has also asserted a common law wrongful termination claim, again based on race. (Doc. 18 ¶¶ 20-22). However, the Kentucky Supreme Court held that the KCRA preempted claims of wrongful termination based on discrimination:

> The Kentucky Commission on Human Rights is structured in KRS Chapter 344 to adjudicate complaints of discrimination on these grounds. Thus, the same statute

15

> which would provide the necessary underpinning for a
> wrongful discharge suit where there is sufficient
> evidence to prove sex discrimination in employment
> practices also structures the remedy. The statute not
> only creates the public policy but preempts the field of
> its application.

*Grzyb*, 700 S.W.2d at 401. Later, the Kentucky Supreme Court clarified its holding in *Grzyb*, opining that "preemption occurs when the statutes that establish the 'well-defined public policy' violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of action for, and structure the remedy for, violations of that public policy." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010).

Here, as in *Grzyb*, the only public-policy violation Hines has pointed to is the same public policy embodied in the KCRA, which provides a statutory cause of action and remedy for discrimination. Accordingly, the proper remedy for any wrongful termination based on race would come from Hines's claim under the KCRA and not from a separate cause of action. Thus, Hines's wrongful termination claim fails as a matter of law.

## D. Punitive Damages

Hines has also asserted an independent claim for punitive damages. (Doc. 18 ¶¶ 23-25). However, this claim fails for two reasons. First, punitive damages are "not a separate cause of action, . . . but rather a special remedy." *Salisbury v. Purdue*

*Pharma, L.P.*, 166 F. Supp. 2d 546, 548, n.1 (E.D. Ky. 2001). Second, Hines has not presented evidence of any conduct by ADM warranting punitive damages.

### E. Attorney's Fees

Finally, ADM argues that it is entitled to recovery of its attorney's fees pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent power. (Doc. 46 at 17). In support of its argument, ADM points to Plaintiff's deposition, in which he stated, "I can't prove the discrimination, but I can prove the harassment." (Doc. 46-1, Hines Dep. at 34:22-24). Accordingly, ADM contends that Hines should have voluntarily dismissed the case because he acknowledged that he could not prove at least one of his claims. (Doc. 46 at 18).

"Under Federal Rule of Civil Procedure 11, sanctions may be imposed if 'a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay.'" *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (quoting *Herron v. Jupiter Transp. Co.*, 858 F.2d 332, 335 (6th Cir. 1988)). "[A] plaintiff must review his pleadings and modify them, when necessary, to conform to Rule 11's

17

requirements." *Gibson v. Solideal USA, Inc.*, 489 F. App'x 24, 30 (6th Cir. 2012) (citing *Herron*, 858 F.2d at 335-36).

28 U.S.C. § 1927 provides that an attorney may be personally required to pay attorney's fees and costs incurred when they "unreasonably and vexatiously" multiply the proceedings. "A court may sanction an attorney under § 1927, even in the absence of bad faith, when the 'attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.'" *Id.* at 31 (internal citations omitted). However, "not every loss at the summary-judgment stage warrants sanctions." *Hall v. Rag-O-Rama, LLC*, No. 20-6059, 2021 WL 5782381, at *9 (6th Cir. Dec. 7, 2021) (citing *id.* at 32).

Additionally, "the court may impose sanctions pursuant to its inherent power 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Gibson*, 489 F. App'x at 31 (quoting *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)). Bad faith is only found based on "'*something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings.'" *Id.* (quoting *Metz*, 655 F.3d at 489) (emphasis in original).

Hines argues that the excerpts ADM provided of his deposition were taken out of context and that he additionally stated that "he had no choice but to conclude his treatment was because of his

18

ethnicity." (Doc. 47 at 2). He also testified that he chose not to recognize racial discrimination issues, because he saw them as the "other person's problem." (*Id.*).

Although the Court finds, as discussed above, that all of Plaintiff's claims fail as a matter of law, they were not so frivolous as to warrant sanctions under Rule 11, § 1927, or the Court's inherent power. Under the *McDonnell Douglas* burden-shifting framework, a plaintiff need not have direct evidence of discrimination to succeed on such a claim, so Hines's admission that he could not "prove" discrimination was not necessarily dispositive of his legal claim, particularly given the context provided in Hines's Response. Accordingly, the Court finds that Hines's admission did not give rise to a duty to amend his complaint under Rule 11. For the same reasons, the Court cannot conclude that Hines's attorney unreasonably and vexatiously multiplied the proceedings. Further, ADM has not demonstrated that Hines acted in bad faith in pursuing this action.

Accordingly, the Court will deny Defendant's Motion for Attorney's Fees.

### Conclusion

Therefore, for the reasons stated above, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment on all Plaintiff's claims (Doc. 46) be, and is hereby, **GRANTED;**

19

    (2) Defendant's Motion for Attorney's Fees (Doc. 46) be, and is hereby, **DENIED**;

    (3) A separate judgment shall enter concurrently herewith.

    This 19th day of December 2022.



**Signed By:**

**_William O. Bertelsman_**

**United States District Judge**